UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| LIGURIA FOODS, INC., <br><br> Plaintiff, <br><br> v. <br><br> GRIFFITH LABORATORIES, INC., <br><br> Defendant. | Case No. 14-cv-3041-MWB <br><br> JURY TRIAL DEMANDED |

## DEFENDANT GRIFFITH LABORATORIES, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT AND JURY DEMAND

Defendant, Griffith Laboratories, Inc., (hereafter "Griffith") by and through its attorney, HEIDMAN LAW FIRM, LLP and PERKINS COIE LLP, for its Answer and Affirmative Defenses to the Complaint And Jury Demand by Plaintiff, LIGURIA FOODS, INC. (hereafter "Liguria") states as follows:

1. Liguria, a manufacturer of pepperoni and other sausages, brings this action as a result of Griffith's breach of certain implied warranties as to Griffith's sale of spice formulas and mixes. As a direct and proximate cause of Griffith's failure to provide spice formulas containing appropriate amounts of specific antioxidant preservatives, Liguria's pepperoni products suffered from early oxidation, discoloration and spoilage, leading to significant product return and withdrawal costs, as well as customers' cancellation of a number of long-standing accounts, resulting in tens of millions of dollars in lost sales and profits.

ANSWER: Griffith admits that Liguria manufactures and sells pepperoni and other sausage products. Griffith denies the remaining allegations of Paragraph 1.

2. Liguria is a Delaware corporation with its principal place of business in Humboldt, Iowa. Liguria is in the business of manufacturing pepperoni, salami and other sausage products.

ANSWER: Griffith admits the allegations of Paragraph 2.

3. Griffith is an Illinois corporation with its principal place of business in Alsip, Illinois. Griffith is a manufacturer of customized seasoning systems, food additives and spice blends for the optimization of flavor, color and preservation.

ANSWER: Griffith admits that it is an Illinois corporation and that its headquarters is located in Alsip, Illinois. Griffith further admits that it is a leading manufacturer of seasoning and spice blends for the food industry. Griffith denies the remaining allegations of Paragraph 3.

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the parties are citizens of different states and the amount in controversy, exclusive of interest and costs, is in excess of $75,000.

ANSWER: It is admitted that neither jurisdiction nor venue is contested.

5. Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to this claim occurred in the Northern District of Iowa.

ANSWER: It is admitted that neither jurisdiction nor venue is contested.

6. Liguria is in the business of manufacturing and selling dried sausage, including, without limitation, pepperoni, salami, and other beef and/or pork products.

ANSWER: Griffith admits that Liguria manufactures pepperoni and other dried sausages. Griffith is lacks information sufficient to admit or deny the remaining allegations of Paragraph 6 and on that basis denies them.

7. Griffith was a supplier of spice mixes for a number of Liguria's products, including, without limitation, Liguria's sliced pepperoni products sold for use as pizza toppings.

ANSWER: Griffith admits that it sold a custom designed mix of materials known as a "spice block" to Liguria for use in its pepperoni products. Griffith lacks information sufficient to admit or deny the remaining allegations of Paragraph 7 and on that basis denies them.

8. Griffith designs and formulates spice mixes based on its customers' requests and needs. Griffith's spice mixes are used to affect end-products' flavor profiles, colors and also to introduce antioxidants and other preservatives into food and other products.

ANSWER: Griffith admits that its custom designed "spice blocks" are used to enhance the taste and flavor of the products sold by its customers. Griffith further admits that some customers also request that Griffith include ingredients designed to prevent oxidation as part of its "spice blocks." Griffith denies the remaining allegations of Paragraph 8.

9. Liguria purchased a number of different, specifically formulated spice mixes from Griffith, including a pepperoni spice mix used in the preparation and manufacture of Liguria's pepperoni brand, one of its leading, highest volume product lines. Griffith named and labeled the pepperoni spice mix in question its Optimized Pepperoni Seasoning, Product Code # 017-2112 ("Pepp Spice").

ANSWER: Griffith admits that it worked with Liguria to develop a mix of spices and other chemicals to be used in Liguria products including its pepperoni products. One of these formulas was referred to as "Optimized Pepperoni Seasoning, Product Code #017-2122." Griffith denies the remaining allegations of Paragraph 9.

10. Liguria's pepperoni is sold in linked, sliced and cubed form. Certain of Liguria's sliced pepperoni is packed in large volume packaging, in amounts of up to twenty five (25) pounds, for sale to hotels, restaurants and institutions. Liguria's sliced pepperoni, when maintained in appropriate cold storage locations, has a shelf life of 270 days.

ANSWER: Griffith lacks information sufficient to admit or deny the allegations of Paragraph 10 and on that basis denies them.

11. Griffith created Pepp Spice for Liguria's pepperoni products. In addition to impacting the flavor profile of the pepperoni, Griffith designed its Pepp Spice to contain a requisite level of antioxidants to prevent spoilage of the pepperoni and to ensure that the products would enjoy a 270 day shelf life.

ANSWER: Griffith lacks information sufficient to admit or deny the allegations of Paragraph 11 and on that basis denies them.

12. Griffith's Pepp Spice was formulated by Griffith to use two related antioxidants, butylated hydroxyanisole ("BHA") and butylated hydroxytoluen ("BHT").

ANSWER: Griffith admits that at the request of Liguria, the "spice blocks" designed for Liguria by Griffith contained the maximum amount of BHA and BHT permitted by regulations promulgated by the United States Department of Agriculture (USDA") at the product usage levels specified by Liguria. Griffith denies the remaining allegations of Paragraph 12.

13. BHA and BHT are fat-soluble antioxidants. Oxygen reacts preferentially with BHA or BHT rather than oxidizing fats or oils, thereby protecting the fats from oxidation and spoilage.

ANSWER: Griffith admits that under certain conditions, BHA and BHT may act as antioxidants. Griffith further admits that BHA and BHT may prevent oxidation of other substances including certain fats or oils. Griffith denies the remaining allegations of Paragraph 13.

14. BHA is generally used to keep fats from becoming rancid.

ANSWER: Griffith admits that BHA is often used as a preservative to help keep certain fats from becoming rancid. Griffith denies the remaining allegations of Paragraph 14.

15. BHT is generally used to prevent oxidative rancidity of fats and to preserve food odor, color and flavor.

ANSWER: Griffith admits that BHT is often used as a preservative to help keep certain fats from becoming rancid. Griffith denies the remaining allegations of Paragraph 15.

16. The United States Department of Agriculture ("USDA") restricts the amount of BHA and BHT within various food products. For products such as dry sausage, including pepperoni, USDA regulations allow BHA and BHT in an amount of up to 0.006%, in combination, of the total weight of dry sausage.

ANSWER: Griffith admits the allegations of Paragraph 16.

17. Griffith was aware and understood that Liguria was relying upon Griffith's expertise, skill and judgment in furnishing a pepperoni spice formula that, in addition to meeting a specific flavor profile, would (1) contain requisite levels of BHA and BHT necessary to prevent oxidation and (2) allow for Liguria's sliced pepperoni to enjoy a shelf life of 270 days.

ANSWER: Griffith denies the allegations of Paragraph 17.

18. Griffith manufactured its Pepp Spice in large volume batches using high volume commercial mixers. After mixing various spices, ingredients and additives, Griffith packaged the Pepp Spice in approximately 33 pound bags, which were commonly referred to during the parties' dealings as "spice blocks."

ANSWER: Griffith admits that the it prepared "spice blocks" for Liguria using commercial mixers and packaged the materials in 33 pound bags. Griffith denies the remaining allegations of Paragraph 18.

19. In accordance with Griffith's directions for use, Liguria utilized two (2) Pepp Spice blocks per 2,450 pounds of meat products to manufacture its pepperoni products.

ANSWER: Griffith admits that the products it supplied to Liguria had directions for use of those products. Griffith lacks information sufficient to admit or deny the remaining allegations of Paragraph 19 and on that basis denies them.

20. Griffith's mixing process failed to evenly distribute appropriate quantities of BHA and BHT, as well as other ingredients, within certain of the Pepp Spice blocks that Griffith manufactured for, and sold to, Liguria.

ANSWER: Griffith denies the allegations of Paragraph 20.

21. The cause of the lack of even distribution of those ingredients, on information and belief, was the result, among other potential causes, of Griffith: (i) overloading its large volume mixers, which prevented the mix from being thoroughly agitated and its ingredients evenly and

uniformly distributed; (ii) failing to mix the dry spices and additives for a sufficient period of time; (iii) having a lack of quality control procedures, and/or (iv) failing to implement an appropriate pre-mix system in order to allow smaller quantities of ingredients to be evenly mixed into the larger batches of the Pepp Spice.

    ANSWER: Griffith denies the allegations of Paragraph 21.

    22.    Beginning in late 2012 and early 2013, Liguria began receiving complaints from direct purchasers and end-users regarding significant discoloration and oxidation of its sliced pepperoni products. The complaints of discoloration and oxidation occurred well within the 270 day shelf life of the product.

    ANSWER: Griffith admits that Liguria notified Griffith in 2013 that it had received complaints regarding Liguria's products in 2012 and 2013. Griffith lacks information sufficient to admit or deny the "shelf life" of Liguria's products. Griffith denies the remaining allegations of Paragraph 22.

    23.    Faced with a significant number of complaints regarding discoloration and/or oxidation of its sliced pepperoni products, Liguria undertook an investigation to identify the cause of that discoloration and oxidation within the shelf life of the product.

    ANSWER: Griffith lacks information sufficient to admit or deny any facts relating to any internal investigation conducted by Liguria concerning its products and on that basis denies the allegations of Paragraph 23.

    24.    Liguria's other sausage products, many of which used Griffith-manufactured spice mixes other than Pepp Spice, did not experience similar discoloration and oxidation. As Liguria's other sausage products, many of which used Griffith spice mixes other than Pepp Spice, used the same base pork and meat materials as were used in Liguria's sliced pepperoni favored with Pepp Spice, Liguria determined that its base pork and meat materials were not the cause of any discoloration and oxidation within its sliced pepperoni product line.

    ANSWER: Griffith lacks information sufficient to admit or deny the allegations of Paragraph 24 and on that basis denies them.

    25.    As its investigation continued, Liguria examined whether Griffith's Pepp Spice was a potential cause of the spoilage and oxidation problems with Liguria's sliced pepperoni product line.

ANSWER: Griffith lacks information sufficient to admit or deny the allegations of Paragraph 25 and on that basis denies them.

26. Chemical analysis of samples of Griffith's Pepp Spice evidenced wide variances in the amounts of BHA and BHT. In certain tests, Griffith's Pepp Spice contained concentrations of BHA and BHT which were well below target levels. The absence of uniformity of BHA and BHT was the result, among other potential causes, of Griffith: (i) overloading its large volume mixers, which prevented the mix from being thoroughly agitated and its ingredients evenly and uniformly distributed; (ii) failing to mix the dry spices and additives for a sufficient period of time; (iii) having a lack of quality control procedures, and/or (iv) failing to implement an appropriate pre-mix system in order to allow smaller quantities of ingredients to be evenly mixed into the larger batches of the pepperoni spice mix.

ANSWER: Griffith lacks information sufficient to admit or deny any facts relating to any chemical analysis conducted by Liguria concerning its products and on that basis denies the allegations of Paragraph 26.

27. Samples of Liguria's pepperoni products also supported Liguria's belief that Griffith's Pepp Spice failed to deliver the specified amount of BHA and BHT in a uniform manner. Samples of Liguria pepperoni that did not evidence discoloration contained detectable levels of BHA and BHT, while testing of discolored Liguria pepperoni showed no detectible levels of BHA and BHT.

ANSWER: Griffith lacks information sufficient to admit or deny any facts relating to any internal investigation conducted by Liguria concerning its products and on that basis denies the allegations of Paragraph 27.

28. Liguria also undertook a chemical analysis of other ingredients within the Griffith Pepp Spice in an attempt to validate its testing data relating to BHA and BHT. Salt, an additional ingredient in the Griffith pepperoni spice mix in far greater quantities than BHA and BHT, was also tested to determine whether even distributions of this ingredient existed. Chemical analysis of Griffith's Pepp Spice similarly evidenced wide variations of salt. The wide variation of salt content within Griffith's Pepp Spice further evidenced a lack of quality control and uneven mixing and distribution of ingredients.

ANSWER: Griffith lacks information sufficient to admit or deny any facts relating to any internal investigation conducted by Liguria concerning its products and on that basis denies the allegations of Paragraph 28.

29. Liguria raised its concerns with Griffith over the wide variations of BHA and BHT, in contravention of the amount of BHA and BHT that was to be present in the Pepp Spice blocks manufactured for Liguria.

ANSWER: Griffith admits that in 2013, representatives of Griffith met with representatives of Liguria to discuss Liguria's complaints about oxidation of its pepperoni products. Griffith denies the remaining allegations of Paragraph 29.

30. Griffith refused to allow Liguria's representatives full access to its facility and refused Liguria's requests to inspect Griffith's high volume mixing equipment and operations.

ANSWER: Griffith denies the allegations of Paragraph 30.

31. Griffith further refused to allow Liguria to review batch records that would indicate whether Griffith was mixing the Pepp Spice for an appropriate duration and/or whether Griffith was overfilling its high volume mixers, thereby preventing uniform distribution of ingredients within the Pepp Spice mix.

ANSWER: Griffith denies the allegations of Paragraph 31.

32. In discussions with representatives of Liguria at Griffith's Illinois facility on July 10, 2013, Griffith acknowledged that it had altered its mixing procedures in an attempt to remedy the wide variation of antioxidant levels within its Pepp Spice mix.

ANSWER: Griffith admits that it met with representatives of Liguria at its Alsip, Illinois headquarters on or about July 10, 2013. Griffith denies the remaining allegations of Paragraph 32.

33. Griffith would not, however, disclose the specific alterations to its mixing procedures.

ANSWER: Griffith denies the allegations of Paragraph 33.

34. The lack of consistency of BHA and BHT in Griffith's Pepp Spice blocks was the proximate cause of the early oxidation, discoloration and spoilage of Liguria's pepperoni products, which caused Liguria to incur significant financial damages and lost profits.

ANSWER: Griffith denies the allegations of Paragraph 34.

35. Liguria incurred damages in the approximate amount of $2,400,000 relating to the return, withdrawal and disposal of discolored and oxidized pepperoni products.

ANSWER: Griffith denies the allegations of Paragraph 35.

36. In addition, at least seven (7) of Liguria's long-standing customers discontinued their purchases of Liguria pepperoni, resulting in an approximate profit loss of over $4,000,000 dollars per year. Liguria reasonably expected those long-standing customers to remain customers for years to come.

ANSWER: Griffith lacks information sufficient to admit or deny the actions of Liguria's customers. Griffith denies the remaining allegations of Paragraph 36.

## COUNT I
### BREACH OF IMPLIED WARRANTY
### OF FITNESS FOR A PARTICULAR PURPOSE

37. Liguria restates and realleges Paragraphs 1 through 36 as and for this Paragraph 37.

ANSWER: Griffith repeats its responses to Paragraphs 1 through 36 as its response to Paragraph 37.

38. Griffith knew that Liguria sought a Pepp Spice mix that, in addition to meeting certain flavor and color profiles, would contain uniform, requisite levels of BHA and BHT to prevent untimely oxidation and discoloration.

ANSWER: Griffith denies the allegations of Paragraph 38.

39. Griffith knew that Liguria sought a pepperoni spice that would contain uniform, requisite levels of BHA and BHT to allow the product to experience a shelf life of up to 270 days.

ANSWER: Griffith admits that at the request of Liguria, Griffith included BHA and BHT in the spice blocks sold to Liguria. Griffith denies the remaining allegations of Paragraph 39.

40. Griffith knew that Liguria was relying upon Griffith's skill and judgment to furnish a specifically formulated and suitable Pepp Spice mix that would contain uniform, requisite levels of BHA and BHT to prevent untimely oxidation and discoloration and to allow the product to experience a shelf life of up to 270 days.

ANSWER: Griffith denies the allegations of Paragraph 40.

41. Griffith knew that, were it to fail to provide a Pepp Spice mix with uniform, requisite levels of BHA and BHT, that untimely oxidation and discoloration well within the expected shelf life of the product was a probable and expected outcome.

ANSWER: Griffith denies the allegations of Paragraph 41.

42. Griffith knew that, were Liguria's pepperoni products to experience early oxidation and discoloration within the expected shelf life of the product, Liguria would be likely to incur significant costs and damages, including without limitation, product returns and withdrawals, product disposal and the termination of purchasing relationships from long-standing business accounts.

ANSWER: Griffith denies the allegations of Paragraph 42.

43. Liguria in fact relied on Griffith's skill and judgment to provide it with a suitable pepperoni spice mix to meet its known preservative and antioxidant needs.

ANSWER: Griffith denies the allegations of Paragraph 43.

44. Griffith breached its implied warranty of fitness for a particular purpose by manufacturing and selling Pepp Spice mix that failed to provide uniform, requisite levels of BHA and BHT.

ANSWER: Griffith denies the allegations of Paragraph 44.

45. As a direct and proximate result of Griffith's failure to supply Liguria with Pepp Spice mix containing uniform, requisite quantities of BHA and BHT, Liguria's sliced pepperoni products suffered from oxidation and discoloration well before the expiration of their shelf life.

ANSWER: Griffith denies the allegations of Paragraph 45.

46. As a direct and proximate result of Griffith's failure to supply Liguria with Pepp Spice mix containing uniform and requisite quantities of BHA and BHT, Liguria incurred costs and damages in the approximate amount of $2,400,000 relating to the return, withdrawal and disposal of significant quantities of discolored and oxidized pepperoni products.

ANSWER: Griffith denies the allegations of Paragraph 46.

47. As a direct and proximate result of Griffith's failure to supply Liguria with Pepp Spice mix containing uniform and requisite quantities of BHA and BHT, seven (7) of Liguria's long-standing customers discontinued their purchases of Liguria pepperoni, resulting in an annual profit loss of over $4,000,000 dollars.

ANSWER: Griffith denies the allegations of Paragraph 47.

48. Liguria reasonably expected those long-standing customers to remain customers for years to come.

ANSWER: Griffith lacks information sufficient to admit or deny the nature of Liguria's relationships with its customers and on that basis denies the allegations of Paragraph 48.

49. Liguria restates and realleges Paragraphs 1 through 36 as and for this Paragraph 49.

ANSWER: Griffith repeats its responses to Paragraphs 1 through 36 as its response to Paragraph 49.

50. Griffith is a merchant that sold Liguria Pepp Spice for Liguria's manufacture of pepperoni products.

ANSWER: Griffith admits that it sold products to Liguria for use in the manufacture of Liguria's pepperoni products. Griffith denies the remaining allegations of Paragraph 50.

51. The goods sold by Griffith to Liguria were not merchantable at the time of sale insofar as they failed to contain uniform and requisite levels of BHA and BHT.

ANSWER: Griffith denies the allegations of Paragraph 51.

52. Liguria's pepperoni products were damaged and rendered unsaleable as a direct and proximate result of Griffith's sale of defective and un-merchantable Pepp Spice.

ANSWER: Griffith denies the allegations of Paragraph 52.

53. The defective nature of Griffith's Pepp Spice proximately caused Liguria to suffer damages arising from product returns, withdrawals and lost business from long-standing customers.

ANSWER: Griffith denies the allegations of Paragraph 53.

54. Liguria provided notice of its damages to Griffith. Griffith, in response, failed to take any action or acknowledge any responsibility for damages arising from its sale of goods that were not merchantable.

ANSWER: Griffith denies the allegations of Paragraph 54.

55. As a direct and proximate result of Griffith's breach of its implied warranty of merchantability, Liguria incurred costs and damages in the approximate amount of $2,400,000 relating to the return, withdrawal and disposal of significant quantities of discolored and oxidized pepperoni products.

ANSWER: Griffith denies the allegations of Paragraph 55.

56. As a direct and proximate result of Griffith's breach of its implied warranty of merchantability, seven (7) of Liguria's long-standing customers discontinued their purchases of Liguria pepperoni, resulting in an annual profit loss of over $4,000,000 dollars.

ANSWER: Griffith denies the allegations of Paragraph 56.

57. Liguria reasonably expected those long-standing customers to remain customers for years to come.

ANSWER: Griffith lacks information sufficient to admit or deny the nature of Liguria's relationships with its customers and on that basis denies the allegations of Paragraph 57.

58. Plaintiff demands a trial by jury pursuant to Federal Rule of Civil Procedure 38.

ANSWER: No response is required to Paragraph 58.

WHEREFORE, Griffith Laboratories, Inc. respectfully requests that this Court enter judgment in its favor and against Liguria Foods, Inc., dismissing Liguria's claims with prejudice and awarding such further relief as this Court deems fair and equitable.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense
### (Failure to State a Claim)

1. Liguria's Complaint fails to state a claim upon which relief may be granted and therefore should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### Second Affirmative Defense
### (Equitable Defenses)

2. Liguria's claims should be dismissed pursuant to the equitable doctrines of estoppel, laches and unclean hands.

### Third Affirmative Defense
### (Damages Attributable to Plaintiff or Other Parties)

3. Liguria's damages, if any, were proximately caused by the acts or omissions of others over whom Griffith exercised no dominion or control, and said acts or omissions were a superseding cause of Liguria's alleged damages.

-13-
Case 3:14-cv-03041-MWB-CJW   Document 10   Filed 08/29/14   Page 13 of 16

### Fourth Affirmative Defense
### (Substantial Alteration of Product)

4. To the extent Liguria claims it has been harmed by a product originally designed, manufactured, or sold by Griffith, then such product was substantially altered, improperly maintained, or misused by persons and/or entities other than Griffith, and over whom Griffith exercised no dominion or control, following the date of initial manufacture and sale of such product, and such alteration, improper maintenance, or misuse occurred without Griffith's knowledge or consent and proximately caused or contributed to causing Liguria' alleged damages.

### Fifth Affirmative Defense
### (Statutes of Limitations and Repose)

5. Liguria' claims and/or causes of action are barred, in whole or in part, by the applicable statutes of limitation and/or repose.

### Sixth Affirmative Defense
### (Failure to Mitigate Damages)

6. Liguria failed to exercise reasonable care to avoid, minimize or mitigate their damages, if any.

### Seventh Affirmative Defense
### (Preemption by Federal Law)

7. Liguria's claims against Griffith may be barred in whole or in part and/or preempted by applicable federal law, with which Griffith complied.

### Eighth Affirmative Defense
### (Compliance with Applicable Statutes)

8. Griffith complied with all relevant applicable federal and state statutes and administrative regulations existing at the time of the events at issue in Liguria's Complaint.

Case 3:14-cv-03041-MWB-CJW   Document 10   Filed 08/29/14   Page 14 of 16

## Ninth Affirmative Defense
### (Failure to Join Indispensable Parties)

9. The Complaint and all claims for relief therein should be dismissed on the ground that Liguria may have failed to join necessary and indispensable parties.

Griffith's investigation into the matters asserted in Liguria's Complaint is in its earliest stages and discovery has not commenced in this action. Griffith, therefore, reserves the right to add those affirmative defenses which it deems necessary to its defense during or upon the conclusion of investigation and discovery.

DATED this 29th day of August, 2014.

Respectfully submitted,

GRIFFITH LABORATORIES, INC.

By: /s/ John C. Gray
John C. Gray (AT0002938)
HEIDMAN LAW FIRM, LLP
1128 Historic Fourth Street
P.O. Box 3086
Sioux City, IA 51102-0386
Telephone: (712) 255-8838
Facsimile: (712) 258-6714
John.Gray@heidmanlaw.com

Christopher B. Wilson, ARDC No. 06202139
Randy A. Bridgeman
Perkins Coie LLP
131 South Dearborn Street, Suite 1700
Chicago, IL 60603-5559
312.324.8400
Fax: 312.324.9603
CWilson@perkinscoie.com

ATTORNEYS FOR DEFENDANT

## PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was served upon all parties in the above cause by CM/ECF, who have registered to receive service by e mail over CM/ECF, on August 29, 2014.

David L. Reinschmidt, Esq.
MUNGER, REINSCHMIDT & DENNE, L.L.P.
Suite 303, Terra Centre
600 4th Street
Sioux City, Iowa 51102

Rick A. Del Giudice, Esq.
Jeffery M. Heftman, Esq.
**GOZDECKI, DEL GIUDICE, AMERICUS,
FARKAS & BROCATO LLP**
One East Wacker Drive, Suite 1700
Chicago, IL 60601

/s/ John C. Gray