**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

LIGURIA FOODS, INC.,

            Plaintiff,

vs.

GRIFFITH LABORATORIES, INC.,

            Defendant.

No. C 14-3041-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING THE
COURT'S ORDER TO SHOW
CAUSE WHY COUNSEL FOR BOTH
PARTIES SHOULD NOT BE
SANCTIONED FOR DISCOVERY
ABUSES**

_____

**TABLE OF CONTENTS**

I.      *INTRODUCTION*..............................................................................*6*
        A.      *Factual Background* ..............................................................*6*
                1.      *The nature of the litigation*...........................................*6*
                2.      *Potentially obstructionist discovery responses*........................*7*
        B.      *Procedural Background* ..........................................................*17*
                1.      *Pretrial matters* .....................................................*17*
                2.      *The Show Cause Order*...............................................*17*
        C.      *Responses Of The Parties To The Order To Show Cause* ...............*18*
                1.      *Responses in briefs*..................................................*18*
                2.      *Responses at the evidentiary hearing* ..............................*19*

II.     *LEGAL ANALYSIS* ......................................................................*21*
        A.      *Proper Discovery Responses*....................................................*22*
        B.      *Improper discovery responses* .................................................*30*
        C.      *Sanctions* .........................................................................*34*

III.    *CONCLUSION*............................................................................*40*

Case 3:14-cv-03041-MWB   Document 136   Filed 03/13/17   Page 1 of 45

"Laws are like sausages, it is better not to see them being made."

—Otto von Bismarck

This litigation is about who is responsible for tons and millions of dollars' worth of sausage, of the peperoni variety, some of which turned rancid. It's also about lawyers who were not concerned about how the federal discovery rules were made, but how and why they flaunted them. This ruling involves one of the least favorite tasks of federal trial and appellate judges—determining whether counsel and/or the parties should be sanctioned for discovery abuses. This case squarely presents the issue of why excellent, thoughtful, highly professional, and exceptionally civil and courteous lawyers are addicted to "boilerplate" discovery objections.[1] More importantly, why does this

---

[1] As one commentator explained,

> The hallmark of a boilerplate objection is its generality. The word "boilerplate" refers to "trite, hackneyed writing"—an appropriate definition in light of how boilerplate objections are used. An objection to a discovery request is boilerplate when it merely states the legal grounds for the objection without (1) specifying how the discovery request is deficient and (2) specifying how the objecting party would be harmed if it were forced to respond to the request. For example, a boilerplate objection might state that a discovery request is "irrelevant" or "overly broad" without taking the next step to explain why. These objections are taglines, completely "devoid of any individualized factual analysis." Often times

2

widespread addiction continue to plague the litigation industry when counsel were unable to cite a single reported or non-reported judicial decision or rule of civil procedure from any jurisdiction in the United States, state or federal, that authorizes, condones, or approves of this practice?  What should judges and lawyers do to substantially reduce or, more hopefully and optimistically, eliminate this menacing scourge on the legal profession?  Perhaps surprisingly to some, I place more blame for the addiction, and more promise for a cure, on the judiciary than on the bar.[2]  What follows is my ruling

---

> they are used repetitively in response to multiple discovery requests. Their repeated use as a method of effecting highly uncooperative, scorched-earth discovery battles has earned them the nicknames "shotgun"- and "Rambo"-style objections. The nicknames are indicative of the federal courts' extreme disfavor of these objections.

Matthew L. Jarvey, *Boilerplate Discovery Objections:  How They are Used, Why They are Wrong, and What We Can Do About Them*, 61 DRAKE L. REV. 913, 914-16 (2013) (footnotes omitted).

[2] My views on the extent of the scourge and the possible cures are not entirely idiosyncratic—or even new.  *See, e.g.*, Stanley P. Santire, *Discovery Objections Abuse In Federal Courts:  ". . . Objecting to Discovery Requests Reflexively—But Not Reflectively . . .,"* 54-AUG HOUS. LAW. 24 (2016); Hon. Paul W. Grimm and David S. Yellin, *A Pragmatic Approach to Discovery Reform:  How Small Changes Can Make a Big Difference in Civil Discovery*, 64 S.C. L. REV. 495 (2013); Jarvey, *Boilerplate Discovery Objections*, 61 DRAKE L. REV. 913; Mitchell London, *Resolving the Civil Litigant's Discovery Dilemma*, 26 GEO. J. LEGAL ETHICS 837 (2013); Chief Justice Menis E Ketchum II, *Impeding Discovery:  Eliminating Worthless Interrogatory Instructions And Objections*, 2012-JUN W. VA. L. 18 (2012); John H. Beisner, *Discovering A Better Way:  The Need for Effective Civil Litigation Reform*, 60 DUKE L.J. 547 (2010); John S. Beckerman, *Confronting Civil Discovery's Fatal Flaws*, 84 MINN. L. REV. 565 (2000); Robert L. Nelson, *The Discovery Process as a Circle of Blame:  Institutional, Professional, and Socio-economic Factors that Contribute to Unreasonable, Inefficient, and Amoral Behavior In Corporate Litigation*, 67 FORDHAM L. REV. 773 (1998); Jean M. Cary, *Rambo Depositions:  Controlling an Ethical Cancer in Civil Litigation*, 25

3

after a hearing on March 7, 2017, pursuant to my January 27, 2017, Order To Show Cause Why Counsel For Both Parties Should Not Be Sanctioned For Discovery Abuses And Directions For Further Briefing,

Rule 1 of the Federal Rules of Civil Procedure states that the Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Nevertheless, modern "litigation" practice all too often disregards that admonition and seems to favor wars of discovery attrition. "[A]lthough the rule is 'more aspirational than descriptive,'" it can, nevertheless, inform the courts' authority to sanction discovery misconduct.[3] Furthermore, the specific Rules devoted to discovery attempt to facilitate the disclosure of relevant information and to avoid conflicts by setting out the when, what, and how of discovery, as well as how to raise objections, in ways that should lead to the narrowing of issues and the resolution of disputes without the involvement of the court. Even so, discovery all too often becomes a needlessly time-consuming, and often needlessly expensive, game of obstruction and non-disclosure. Indeed, obstructionist discovery practice is a firmly entrenched "culture" in some parts of the country, notwithstanding

---

HOFSTRA L. REV. 561 (1996).

For example, I note that, in 1986—a full three decades ago—the A.B.A. Commission on Professionalism "encouraged judges to *impose* sanctions for abuse of the litigation process, noting that the Federal Rules permit the imposition of sanctions for such abuse." *See* Cary, *Rambo Depositions*, 25 HOFSTRA L. REV. at 594 (emphasis added) (citing A.B.A. Comm'n on Professionalism, ". . . *In the Spirit of Public Service:" A Blueprint for the Rekindling of Lawyer Professionalism*, 112 F.R.D. 243, 265, 291-92 (1986)). Thus, calls for judges to be more willing to punish discovery abuses came from the bar, as well as from commentators and the bench.

[3] London, *Resolving the Civil Litigant's Discovery Dilemma*, 26 GEO. J. LEGAL ETHICS at 851 (footnotes omitted) (quoting *Lee v. Max Int'l, L.L.C.*, 638f3 1318, 1321 (10th Cir. 2011)).

4

that it involves practices that are contrary to the rulings of every federal and state court to address them. As I remarked at an earlier hearing in this matter, "So what is it going to take to get . . . law firms to change and practice according to the rules and the cases interpreting the rules? What's it going to take?"[4] While one of the attorneys gave the hopeful answer that admonitions from the courts had made clear what practices are unacceptable, it is clear to me that admonitions from the courts have not been enough to prevent such conduct and that, perhaps, only sanctions will stop this nonsense.

I know that I am not alone in my goal of eliminating "boilerplate" responses and other discovery abuses, because the goal is a worthy one.[5] As one commentator observed:

> Though boilerplate objections are relatively common in modern civil litigation, the legal community can take steps to curb their use. Attorneys and judges alike must recognize the

---

[4] 01/23/17 Hrg. Tr. 12:15-17.

[5] Although I have made no secret of my unhappiness with obstructionist practices in discovery and, on one occasion, I fashioned a sanction for such conduct that the appellate court found too unusual to affirm without more notice to the sanctioned party, I have still rarely imposed sanctions for obstructionist practices in my twenty-two years as a federal district judge and my three years prior to that as a federal magistrate judge. *See Security Nat'l Bank of Sioux City v. Abbott Labs.*, 299 F.R.D. 595 (N.D. Iowa 2014) (requiring an attorney to write and produce a training video that addressed the impropriety of her obstructionist deposition conduct as a sanction for such conduct), *rev'd*, 800 F.3d 936 (8th Cir. 2015) (vacating the sanction for failure to give adequate advance notice of the unusual nature of the sanction being considered); *St. Paul Reins. Co., Ltd., v. Commercial Fin. Corp.*, 197 F.R.D. 620 (N.D. Iowa 2000) (a party's continued assertion of privileges, after once being warned of the impropriety of its assertions, was "without substantial justification," and warranted the payment of the opposing party's attorney's fees and expenses in bringing a motion to compel as a sanction); *St. Paul Reins. Co., Ltd., v. Commercial Fin. Corp.*, 198 F.R.D. 508 (N.D. Iowa 2000) (requiring an attorney to write an article regarding why his objections to discovery requests were improper and submit such article to bar journals).

> costs these objections impose on the efficient administration
> of justice and on the legal profession. Only with such an
> understanding, and an attendant willingness to effectively
> penalize those who issue boilerplate objections, can their use
> be reduced. Hopefully, with an increased focus on preventing
> abusive discovery practices, including boilerplate objections,
> the legal profession can move toward fairer, more effective
> discovery practices.[6]

Thus, while I find the task distasteful, I embark on my consideration of whether the conduct of the parties in this case warrants sanctions for discovery abuses.

## I.  INTRODUCTION

### A.  Factual Background

#### 1.  The nature of the litigation

Plaintiff Liguria Foods, Inc., (Liguria) is a pepperoni and dried sausage manufacturer with its principal place of business in Humboldt, Iowa. Liguria's most popular product is a finished pepperoni product called "Liguria Pepperoni," although Liguria makes other kinds of pepperoni, as well. Defendant Griffith Laboratories, Inc., (Griffith) is a manufacturer of food seasonings and spice blends with its principal place of business in Alsip, Illinois. Beginning in approximately 1994, Griffith sold mixes of custom spices to Liguria or its predecessor company, Humboldt Sausage. In late 2012 and early 2013, Liguria received complaints from customers that the Liguria Pepperoni, which contains Griffith's Optimized Pepperoni Seasoning, was prematurely turning green and grey, within 140 to 160 days after production, even though Liguria Pepperoni was supposed to have a shelf life of 270 days from slicing. After this problem arose, Liguria lost several of its longstanding customers.

---

[6] Jarvey, *Boilerplate Discovery Objections*, 61 DRAKE L. REV. at 936.

6

Eventually, Liguria concluded that Griffith's Optimized Pepperoni Seasoning contributed to the premature spoliation of its Liguria Pepperoni. On July 3, 2014, Liguria filed a Complaint asserting claims for breach of implied warranty of fitness for a purpose and breach of implied warranty of merchantability. Griffith filed an Answer denying the substance of Liguria's claims. Throughout this litigation, Griffith has contended, *inter alia*, that either underlying problems in Liguria's raw meat supply or Liguria's "rework"[7] policies were far more likely to be responsible for Liguria's rancidity problems than Griffith's spices.

### 2.    *Potentially obstructionist discovery responses*

In my review of another discovery dispute between the parties, raised in Griffith's January 12, 2017, Emergency Motion To Address Possible Discovery Abuses, the issue now before me, which involves potentially obstructionist discovery responses by *both* parties, came to my attention. In preparing for a hearing on January 23, 2017, on Griffith's Motion, I reviewed some of Liguria's written responses to Griffith's discovery requests attached to the Motion. I noted discovery responses that I suspected or believed were abusive and/or not in compliance with the applicable rules, but mere "boilerplate" objections. At the hearing on January 23, 2017, after questioning Griffith's lead counsel and hearing his candid responses, I indicated my belief that it was likely that Griffith's written responses to Liguria's discovery requests were also abusive "boilerplate" responses. Consequently, I directed the parties to file, under seal, all their written responses to each other's discovery requests by the following day. I also notified counsel of my intention to impose sanctions on every attorney who signed the discovery

---

[7] "Rework" is ends or parts of a product that are cut off and not used in the finished product, but are, instead, mixed back into a later batch of the product.

7

responses, if I determined that the responses were, indeed, improper or abusive. The parties filed their written responses to discovery requests, as directed, the following day.

After reviewing those discovery responses, I entered an order advising the parties that I suspected that the discovery responses listed in the following table were improper:

| Suspect Objections To Discovery Requests | | |
|---|---|---|
| **Objection** | **Response** | **Rule(s) Possibly Violated** |
| PL: "to the extent they seek to impose obligations on it beyond those imposed by the Federal Rules of Civil Procedure ** or any other applicable rules or laws"<br><br>DF: "to the extent that it purports to impose obligations . . . beyond those required by the Federal Rules of Civil Procedure" | **Pl's Ans. To Df's 1st Set (#116), Gen. Obj.** 1<br>**Pl's Ans. To Df's 2nd Set (#117), Gen. Obj.** 1<br><br><br>**Df's Ans. To Pl's 1st Set (#118, Tab A), Gen. Obj.** 3<br>**Df's Ans. To Pl's 2nd Set (#118, Tab B), Gen. Obj.** 3<br>**Df's Ans. To Pl's 4th Set (#118, Tab F), Gen. Obj.** 3<br>**Df's Ans. To Pl's 5th Set (#118, Tab G), Gen. Obj.** 3<br>**Df's Ans. To Pl's 3rd Set (#118, Tab H), Gen. Obj.** 3 | Rules 33(b)(4), 34(b)(2)(B) |

Case 3:14-cv-03041-MWB   Document 136   Filed 03/13/17   Page 8 of 45

| Suspect Objections To Discovery Requests | | |
|---|---|---|
| **Objection** | **Response** | **Rule(s) Possibly Violated** |
| PL: "to the extent they call for documents protected by the attorney-client privilege, the work product rule, or any other applicable privilege"<br><br>DF: "to the extent they seek information that is protected from discovery under the attorney-client privilege, the attorney work-product doctrine or is otherwise privileged or protected from disclosure" | **Pl's Ans. To Df's 1st Set (#116), Gen. Obj.** 4<br>**Pl's Ans. To Df's 2nd Set (#117), Gen. Obj.** 4<br><br>**Df's Ans. To Pl's 1st Set (#118, Tab A), Gen. Obj.** 1<br>**Df's Ans. To Pl's 2nd Set (#118, Tab B), Gen. Obj.** 1<br>**Df's Ans. To Pl's 4th Set (#118, Tab F), Gen. Obj.** 1<br>**Df's Ans. To Pl's 5th Set (#118, Tab G), Gen. Obj.** 1<br>**Df's Ans. To Pl's 3rd Set (#118, Tab H), Gen. Obj.** 1 | Rule 26(b)(5) |
| PL: "to the extent they request the production of documents that are not relevant, are not reasonably calculated to lead to the discovery of admissible evidence or are not within their possession, custody and control" | **Pl's Ans. To Df's 1st Set (#116), Gen. Obj.** 5<br>**Pl's Ans. To Df's 2nd Set (#117), Gen. Obj.** 5 | Rules 33(b)(4), 34(b)(2)(B) |

9

| Suspect Objections To Discovery Requests | | |
|---|---|---|
| **Objection** | **Response** | **Rule(s) Possibly Violated** |
| PL: "insofar as they seek information that is confidential or proprietary"<br><br><br>DF: "to the extent they seek the disclosure of trade secrets, or confidential or proprietary information without the entry of an appropriate protective order" | **Pl's Ans. To Df's 1st Set (#116), Gen. Obj.** 6<br>**Pl's Ans. To Df's 2nd Set (#117), Gen. Obj.** 6<br><br>**Df's Ans. To Pl's 1st Set (#118, Tab A), Gen. Obj.** 6<br>**Df's Ans. To Pl's 2nd Set (#118, Tab B), Gen. Obj.** 6<br>**Df's Ans. To Pl's 4th Set (#118, Tab F), Gen. Obj.** 7<br>**Df's Ans. To Pl's 5th Set (#118, Tab G), Gen. Obj.** 6<br>**Df's Ans. To Pl's 3rd Set (#118, Tab H), Gen. Obj.** 6 | Rule 26(b)(5) |
| PL: "to the time period defined in the Document Requests and Interrogatories as overbroad and not reasonably calculated to lead to the discovery of admissible evidence"<br><br>DF: Similar objection concerning "burdensomeness," adding, "[The request] is not limited to a reasonable time frame [and so is] overly broad and unduly burdensome. Plaintiff purports to seek information for all periods from January 1, 2009 to the present." | **Pl's Ans. To Df's 1st Set (#116), Gen. Obj.** 7<br>**Pl's Ans. To Df's 2nd Set (#117), Gen. Obj.** 7<br><br>**Df's Ans. To Pl's 1st Set (#118, Tab A), Gen. Obj.** 5<br>**Df's Ans. To Pl's 2nd Set (#118, Tab B), Gen. Obj.** 5<br>**Df's Ans. To Pl's 4th Set (#118, Tab F), Gen. Obj.** 5<br>**Df's Ans. To Pl's 5th Set (#118, Tab G), Gen. Obj.** 5<br>**Df's Ans. To Pl's 3rd Set (#118, Tab H), Gen. Obj.** 5 | Rules 33(b)(4), 34(b)(2)(B) |

10

| Suspect Objections To Discovery Requests | | |
|---|---|---|
| **Objection** | **Response** | **Rule(s) Possibly Violated** |
| DF: "the defined term 'Liguria Related Documents' as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence" and "to the extent it seeks to impose an obligation to retain every document related in any way to Liguria" | **Df's Ans. To Pl's 2nd Set (#118, Tab B), Gen. Obj.** 7 | Rules 33(b)(4), 34(b)(2)(B) |

| Suspect Objections To Discovery Requests | | |
|---|---|---|
| **Objection** | **Response** | **Rule(s) Possibly Violated** |
| PL: "subject to [and without waiving] its [general] objections" | **Pl's Ans. To Df's 1st Set (#116), Interrogs.** 1, 5-7, 10(1), 11, 12, 14, 15, 18-20 **Pl's Ans. To Df's 1st Set (#116), Doc. Reqs.** 1-7, 12-15, 19, 21-26 **Pl's Ans. To Df's 2nd Set (#117), Interrogs.** 21, 22, 25 **Pl's Ans. To Df's 2nd Set (#117), Doc. Reqs.** 27-29, 31-33 | Rules 33(b)(4), 34(b)(2)(B) |
| DF: "Subject to and without waiving its general and specific objections" | **Df's Ans. To Pl's 1st Set (#118, Tab A), Doc. Reqs.** 1-20, 22, 26 **Df's Ans. To Pl's 1st Set (#118, Tab A), Interrogs.** 1-6 **Df's Ans. To Pl's 2nd Set (#118, Tab B), Doc. Reqs.** 1-8 **Df's Ans. To Pl's 2nd Set (#118, Tab B), Interrogs.** 1-4 **Df's Ans. To Pl's 4th Set (#118, Tab F), Interrogs.** 1, 2 **Df's Ans. To Pl's 5th Set (#118, Tab G), Gen. Obj.** 1, 2, 4-9 **Df's Ans. To Pl's 3rd Set (#118, Tab H), Doc. Reqs.** 1 | |

| Suspect Objections To Discovery Requests | | |
|---|---|---|
| **Objection** | **Response** | **Rule(s) Possibly Violated** |
| PL: "overbroad, unduly burdensome" | **Pl's Ans. To Df's 1st Set (#116), Interrogs.** 2, 5-7, 10(2), 12, 18-20<br>**Pl's Ans. To Df's 1st Set (#116), Doc. Reqs.** 1, 7,[8] 12, 14, 16, 18, 20<br>**Pl's Ans. To Df's 2nd Set (#117), Interrogs.** 21-23, 25<br>**Pl's Ans. To Df's 2nd Set (#117), Doc. Reqs.** 27-33 | Rules 33(b)(4), 34(b)(2)(B) |
| DF: frequently stated, "and depending on the meaning [of an allegedly vague term] may also be overly broad, [and] unduly burdensome," but sometimes without any limitation | **Df's Ans. To Pl's 1st Set (#118, Tab A), Doc. Reqs.** 4, 6-22<br>**Df's Ans. To Pl's 1st Set (#118, Tab A), Interrogs.** 1, 2, 4-6<br>**Df's Ans. To Pl's 2nd Set (#118, Tab B), Doc. Reqs.** 1-8<br>**Df's Ans. To Pl's 2nd Set (#118, Tab B), Interrogs.** 5, 6<br>**Df's Ans. To Pl's 3rd Set (#118, Tab H), Doc. Reqs.** 1 | |

---

[8] Liguria's Ans. To Df's 1st Set (#116), Doc. Req. 7 does add, presumably as an explanation of overbreadth, "Request No. 7 seeks all communications between Liguria representatives and any distributor of [Griffith's Optimized Pepperoni Seasoning], without regard to the subject matter of the requested communication."

13

| Suspect Objections To Discovery Requests | | |
|---|---|---|
| **Objection** | **Response** | **Rule(s) Possibly Violated** |
| PL: "not reasonably calculated to lead to the discovery of admissible evidence" | **Pl's Ans. To Df's 1st Set (#116), Interrogs.** 2, 12, 19, 20<br>**Pl's Ans. To Df's 1st Set (#116), Doc. Reqs.** 1, 7, 14, 16, 18, 20<br>**Pl's Ans. To Df's 2nd Set (#117), Interrogs.** 21-23,[9] 25<br>**Pl's Ans. To Df's 2nd Set (#117), Doc. Reqs.** 27-33 | Rules 33(b)(4), 34(b)(2)(B) |
| DF: frequently stated, "and depending on the meaning [of an allegedly vague term] may also be . . . not reasonably calculated to lead to the discovery of admissible evidence," but sometimes without any limitation | **Df's Ans. To Pl's 1st Set (#118, Tab A), Doc. Reqs.** 4, 6-22<br>**Df's Ans. To Pl's 1st Set (#118, Tab A), Interrogs.** 1, 2, 4-6<br>**Df's Ans. To Pl's 2nd Set (#118, Tab B), Doc. Reqs.** 1-8<br>**Df's Ans. To Pl's 2nd Set (#118, Tab B), Interrogs.** 5, 6<br>**Df's Ans. To Pl's 3rd Set (#118, Tab H), Doc. Reqs.** 1 | |

---

[9] Liguria's Ans. To Df's 2nd Set (#118) Interrog. 23 does add, presumably as an explanation of overbreadth, "to the extent it purports to seek studies which 'evaluate the effectiveness' of mixers used by Liguria."

14

| Suspect Objections To Discovery Requests | | |
|---|---|---|
| **Objection** | **Response** | **Rule(s) Possibly Violated** |
| PL: "as the term(s) [X and Y] are not defined"<br>PL: (Similar) "[to a term or terms] as vague and ambiguous, insofar as it presupposes that Griffith provided [information about its own procedures to Liguria for its review] | **Pl's Ans. To Df's 1st Set (#116), Interrogs.** 2<br>**Pl's Ans. To Df's 1st Set (#116), Interrogs.** 11 | Rules 33(b)(4), 34(b)(2)(B) |
| DF: "to the [undefined] term [Z] as vague and ambiguous [or confusing]"[10] (sometimes adding that the term in question "is not a term used by or known to Griffith") | **Df's Ans. To Pl's 1st Set (#118, Tab A), Doc. Reqs.** 3, 5, 9-13, 15-17, 19, 20, 25<br>**Df's Ans. To Pl's 1st Set (#118, Tab A), Interrogs.** 4<br>**Df's Ans. To Pl's 4th Set (#118, Tab F), Interrogs.** 1, 2<br>**Df's Ans. To Pl's 5th Set (#118, Tab G), Interrogs.** 2, 4-9 | |
| PL: "as discovery remains ongoing and Griffith [has failed to respond to Liguria's discovery requests]" | **Pl's Ans. To Df's 1st Set (#116), Interrogs.** 3, 4 | Rule 26(d) |

---

[10] Interestingly, in Df's Ans. To Pl's First Set (#118, Tab A), Doc. Req. 3, Griffith identifies "communications" as "vague and ambiguous," but Griffith used that term in its own 1st Request For Documents, for example, in Request No. 9, and other discovery requests.

| Suspect Objections To Discovery Requests | | |
|---|---|---|
| **Objection** | **Response** | **Rule(s) Possibly Violated** |
| PL: "as discovery remains ongoing and Liguria reserves the right to [supplement]" | **Pl's Ans. To Df's 1st Set (#116), Interrogs.** 9, 10(1) | Rule 26(d) |
| DF: "as premature. Discovery in this matter has only recently commenced and Griffith's investigation is continuing." | **Df's Ans. To Pl's 1st Set (#118, Tab A), Doc. Reqs.** 22-24 <br> **Df's Ans. To Pl's 1st Set (#118, Tab A), Interrogs.** 1, 2, 4, 6 | |
| PL: "as calling for the disclosure of information subject to the attorney-client privilege and/or work product immunity doctrine" | **Pl's Ans. To Df's 1st Set (#116), Interrogs.** 14, 15 <br> **Pl's Ans. To Df's 1st Set (#116), Doc. Reqs.** 5, 6, 17 | Rule 26(b)(5) |
| DF: "seeks documents protected by the attorney-client privilege and/or the attorney work product doctrine" | **Df's Ans. To Pl's 1st Set (#118, Tab A), Doc. Reqs.** 3-5, 10-12 <br> **Df's Ans. To Pl's 1st Set (#118, Tab A), Interrogs.** 3 <br> **Df's Ans. To Pl's 2nd Set (#118, Tab B), Interrogs.** 1-4 <br> **Df's Ans. To Pl's 5th Set (#118, Tab G), Interrogs.** 1 | |
| PL: "requests the production of confidential and proprietary information of non-parties" | **Pl's Ans. To Df's 2nd Set (#117), Interrogs.** 21 | Rule 26(b)(5) |

Liguria's responses to Griffith's interrogatories and requests for production of documents were signed by local counsel on behalf of Liguria's lead attorneys, who have

16

their offices in Chicago, Illinois. Griffith's pertinent discovery responses were signed by its lead attorney, who also has offices in Chicago, Illinois. At the January 23, 2017, hearing, I ascertained that local counsel for both parties had acted essentially as "drop boxes" for filings, but did not have any active role in formulating the discovery responses in question.

### B.    Procedural Background

#### 1.    Pretrial matters

The relevant pretrial matters can be summarized quite briefly. On July 3, 2014, Liguria filed a Complaint asserting claims for breach of implied warranty of fitness for a purpose and breach of implied warranty of merchantability, and, on August 29, 2014, Griffith filed an Answer denying the substance of Liguria's claims. The trial has been reset to begin on May 1, 2017.

#### 2.    The Show Cause Order

On January 27, 2017, I entered an Order To Show Cause Why Counsel For Both Parties Should Not Be Sanctioned For Discovery Abuses And Directions For Further Briefing. In the Order To Show Cause, I directed that every attorney for the parties who signed a response to interrogatories or a response to a request for documents in this case, with the exception of local counsel, appear and show cause, at a hearing previously scheduled for March 7, 2017, why he should not be sanctioned for discovery abuses.[11] I also provided the table of the discovery responses, included above, showing the responses that I suspected were improper. In Section II of that order, I then directed the parties to

---

[11] The Order To Show Cause also specified that any attorney not arguing Griffith's Motion was allowed to appear by telephone for the "show cause" portion of the hearing. *See* Order To Show Cause at 1.

17

submit, not later than February 28, 2017, briefs in response to the Show Cause part of the Order addressing the following matters:

> 1.    Whether each of the discovery responses by that party identified in the table . . . is or is not a violation of the rule cited or otherwise an abuse of discovery, and

> 2.    If any responses identified in the table . . . are discovery abuses, the appropriate sanction or combination of sanctions that is appropriate for an offending attorney.

On February 28, 2017, the parties filed those briefs, as directed. Those briefs were Liguria's Brief In Response To Section II Of The Order To Show Cause Of January 27, 2017, and Griffith's Response To Order To Show Cause.

## C.    Responses Of The Parties To The Order To Show Cause

### 1.    Responses in briefs

In its brief in response to the Order To Show Cause, Liguria states that, based upon its review of my Order To Show Cause, the applicable Federal Rules of Civil Procedure, and its discovery responses, it recognizes that many of its objections are not stated with specificity. Liguria asserts, nevertheless, that it has not interposed any objection "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," pursuant to Rule 26(g)(1)(B)(ii). Liguria also points out that some of its objections did interpose explanations to justify their basis, such as the ones that I identified, *supra*, in notes 8 and 9. In addition, Liguria argues that it did so in its responses to Interrogatories Nos. 2 and 18 and Request For Production No. 1.

In its brief in response to the Order To Show Cause, Griffith, like Liguria, states that its written responses to Liguria's discovery requests were not intended for any improper purposes and that the parties have, in fact, conducted this litigation in a

cooperative and professional manner. Griffith also contends that a magistrate judge has already reviewed various of Griffith's responses and found no fault with them. Griffith contends that both parties relied on standard "boilerplate" language to assure that they were not waiving their rights while they met and conferred about the scope of privileges, pertinent time periods, and myriad other issues in this complex case. Indeed, Griffith contends that the eleven statements in its discovery responses that I identified in my Order To Show Cause do not constitute discovery abuses. This is so, Griffith argues, because the responses were intended to preserve any objection, but not for harassment or delay, and they did not require any additional work or expense by Liguria. Griffith contends that certain of its responses were intended to narrow the privilege issues or protect information until an appropriate protective order was entered, or were intended to narrow the relevant time frame, where the parties have had a relationship since at least 1995, but the problems at the center of the litigation arose only in late 2012. Counsel for Griffith does acknowledge that, in light of my concerns expressed at the January 23, 2017, hearing and in the Order To Show Cause, four of its responses were not helpful nor well-constructed, but nevertheless were not in bad faith or for any improper purpose, and another response could have been "more artful" to indicate an intent to supplement that response later.

## 2. Responses at the evidentiary hearing

The first part of the hearing on March 7, 2017, was devoted to the issues raised in my Show Cause Order. Counsel for both parties candidly admitted that there were no published decisions that allowed or condoned the sort of "boilerplate" objections that I had pointed out in the Show Cause Order. Counsel for both parties also represented that, notwithstanding the "boilerplate" objections, they had conferred professionally and cordially and had been able to resolve most discovery issues by consultation, with what

I agree was surprisingly little need for intervention by the court in such a complicated case involving such voluminous discovery.

As to the question of why counsel for both sides had resorted to "boilerplate" objections, counsel admitted that it had a lot to do with the way they were trained, the kinds of responses that they had received from opposing parties, and the "culture" that routinely involved the use of such "standardized" responses. Indeed, one of the attorneys indicated that some clients—although not the clients in this case—expect such responses to be made on their behalf. I believe that one of the attorneys hit the nail squarely on the head when he asserted that such responses arise, at least in part, out of "lawyer paranoia" not to waive inadvertently any objections that might protect the parties they represent. Even so, counsel for both parties admitted that they now understood that such "boilerplate" objections do not, in fact, preserve any objections. Counsel also agreed that part of the problem was a fear of "unilateral disarmament." This is where neither party's attorneys wanted to eschew the standard, but impermissible, "boilerplate" practices that they had all come to use because they knew that the other side would engage in "boilerplate" objections. Thus, many lawyers have become fearful to comply with federal discovery rules because their experience teaches them that the other side would abuse the rules. Complying with the discovery rules might place them at a competitive disadvantage.

Returning to the matter of the conduct of counsel in this case, counsel for both parties reiterated that their relationship has been professional and effective in narrowing the scope of discovery requests. They represented that the responses with which I had taken issue, and which they admitted were improper under the Federal Rules of Civil Procedure, were taken by counsel in this case as signals of a need or desire to narrow discovery requests, and a desire for discussion, rather than as refusals to provide responses or indications of any intent to impede or improperly delay discovery. Thus,

20

while they admitted that both sides had made improper discovery responses, they suggested that this was a poor case in which to impose sanctions, because there had been no bad faith and no real detriment or impediment to discovery.

Furthermore, counsel for both parties sincerely pledged not to engage in such improper discovery practices in the future and to work within their firms to change the way their firms do things. They also both suggested that they would be willing to put together courses or continuing legal education programs for lawyers or law students about the applicable discovery rules and proper and improper discovery objections. They also raised legitimate concerns that sanctions could impede their ability to obtain *pro hac vice* admission in other jurisdictions, which they suggested was a negative consequence out of proportion to their conduct in this case, which had involved an effective working relationship between opposing counsel despite whopping defiance of discovery rules and court decisions.

> Formal discovery under the Federal Rules of Civil Procedure is one of the most abused and obfuscated aspects of our litigation practice.[12]

## II. LEGAL ANALYSIS

Although it was the second issue to arise, I find it appropriate to rule, first, on the Order To Show Cause, relating to what I believed were obstructionist discovery responses by both parties. Having considered the parties' arguments, I now confirm that belief as to all or nearly all the responses that I identified. The question of whether or not to impose sanctions, in light of such improper responses, is a much more difficult issue,

---

[12] Francis E. McGovern & E. Allan Lind, *The Discovery Survey*, 51 LAW & CONTEMP. PROBS. 41, 41 (1988)

however, because I find that this case involved courteous and professional attorneys who worked together in good faith to resolve discovery disputes without the need for intervention by the court.

## A.    *Proper Discovery Responses*

Unfortunately, experience has taught me that attorneys do not know or pay little attention to the discovery rules in the Federal Rules of Civil Procedure.  I preface this discussion with an observation by United States District Judge Paul W. Grimm, of the District of Maryland, who was, at the time, a member of the Advisory Committee on Civil Rules, and the Chair of the Discovery Subcommittee, and David S. Yellin, a litigation associate with a New York law firm:

> [Surveys have] found that, "[a]lthough the civil justice system is not broken, it is in serious need of repair.  In many jurisdictions, today's system takes too long and costs too much."  Few practicing attorneys would be surprised that discovery was singled out as "the primary cause for cost and delay," and often "can become an end in itself."

Hon. Paul W. Grimm and David S. Yellin, *A Pragmatic Approach to Discovery Reform: How Small Changes Can Make a Big Difference in Civil Discovery*, 64 S.C. L. REV. 495, 495-96 (2013) (citations omitted).  Furthermore, "[b]y some estimates, discovery costs now comprise between 50 and 90 percent of the total litigation costs in a case" and "[d]iscovery abuse also represents one of the principal causes of delay and congestion in the judicial system."  Beisner, *Discovering A Better Way*, 60 DUKE L.J. at 549.  It is *ignoring* the applicable Federal Rules of Civil Procedure that I find is at least partially responsible for the increase in the costs and delays of discovery.[13]

---

[13] Judges and lawyers must not downplay the costs imposed by discovery:

Thus, I will begin my analysis with the rules that are pertinent, here. In this case, I am concerned with responses to interrogatories and document requests, which are specifically governed by Rules 33 and 34 of the Federal Rules of Civil Procedure, respectively. Nevertheless, Rule 26 also establishes important requirements for all discovery.

The first part of Rule 26 that is significant, here, is Rule 26(b), which defines the scope of permissible discovery, generally, as follows:

> **(b)** **Discovery Scope and Limits.**
>
> **(1)** **Scope in General.** Unless otherwise limited by court order, the scope of discovery is as follows: *Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case,* considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the

---

The unchecked rise in discovery costs has attracted the attention of corporations, which now list discovery as one of their most pressing concerns when litigation is imminent. This concern is well founded. Discovery costs in U.S. commercial litigation are growing at an explosive rate; estimates indicate they reached $700 million in 2004, $1.8 billion in 2006, and $2.9 billion in 2007. And these figures do not even account for the billions of dollars that corporations pay each year to settle frivolous lawsuits because the burdens of litigating until summary judgment or a favorable verdict are too onerous.

Beisner, *Discovering a Better Way*, 60 DUKE L.J. at 574 (also discussing economic consequences of the "litigation tax").

> issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1) (emphasis added).

The Eighth Circuit Court of Appeals has explained that Rule 26(b)(1) does not give any party "the unilateral ability to dictate the scope of discovery based on their own view of the parties' respective theories of the case," because "[l]itgation in general and discovery in particular . . . are not one sided." *Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919, 925 (8th Cir. 2014). Nor is discovery "limited to material that might be deemed relevant and admissible at trial," because it "is a[n] investigatory tool intended to help litigants gain an understanding of the key persons, relationships, and evidence in a case and, as this case well illustrates, the veracity of those persons and purported evidence, even if the evidence discovered is later deemed not admissible." *Id.* at 926. Furthermore, a party is wrong to suppose "that the concepts of materiality, relevancy, and discoverability are fixed rather than fluid such that parties cannot change their views of the necessity of certain information or their theories of the case during the course of discovery as new facts and relationships are revealed or explained." *Id.*

As a counterbalance to the breadth of permissible discovery set out in Rule 26(b), Rule 26(c) provides, "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more [listed limitations]." FED. R. CIV. P. 26(c)(1). In short, as I explained more than a decade-and-a-half ago, "as long as the parties request information or documents relevant to the claims at issue in the case, and such requests are tendered in good faith and are not unduly burdensome, discovery shall proceed." *St. Paul Reins. Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000). "The

24

party resisting production bears the burden of establishing lack of relevancy or undue burden." *Id*. at 512. I have found nothing to suggest that a more restrictive view of the scope of discovery is now the norm.

Rule 26(d) sets out requirements for the timing of discovery that are pertinent, here. Specifically, Rule 26(d)(1) provides that, generally, a party may not seek discovery before the parties' discovery conference, but Rule 26(d)(2) provides that document requests pursuant to Rule 34 may be delivered '[m]ore than 21 days after the summons and complaint are served on a party." Rule 26(d)(3) sets out the rule for the "sequence" of discovery, as follows:

> **(3)** **Sequence.** Unless the parties stipulate or the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice:
>
> **(A)** methods of discovery may be used in any sequence; and
>
> **(B)** *discovery by one party does not require any other party to delay its discovery.*

FED. R. CIV. P. 26(d)(3) (emphasis added). Indeed, the Advisory Committee Notes, 1970 Amendments explain, "[One] principal effect[] of the new provision [is] . . . to eliminate any fixed priority in the sequence of discovery. . . . In principle, one party's initiation of discovery should not wait upon the other's completion, unless the delay is dictated by special considerations." Thus, Rule 26(d)(3) makes clear that there is no limitation on the sequence of discovery and that a party cannot delay responding to discovery simply because the other party has not yet responded to its discovery.

Rule 26(b)(5) is also relevant, here, because it recognizes the propriety of asserting privileges in response to interrogatories or document requests, but it also requires more than bald assertions of privilege, as follows:

25

**(5)** **Claiming Privilege or Protecting Trial-Preparation Materials.**

    **(A)** ***Information Withheld.*** When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

        **(i)** expressly make the claim; and

        **(ii)** *describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.*

FED. R. CIV. P. 26(b)(5)(A) (emphasis added). The Eighth Circuit Court of Appeals recognized, some time ago, that Rule 26(b)(5) codified a common process for eliminating time-consuming delays in the determination of privilege issues by requiring the party asserting the privilege to provide the party seeking discovery with a list or log that describes the pertinent documents without disclosing the allegedly privileged communications they contain. *PaineWebber Grp., Inc. v. Zinsmeyer Trusts P'ship*, 187 F.3d 988, 992 (8th Cir. 1999). Thus, Rule 26(b)(5)(A)'s requirement of a privilege log as part of any privilege-based objection to discovery is nothing new.

    Finally, Rule 26(e) is relevant, here, because it imposes obligations to correct or supplement prior discovery answers, as follows:

    **(e)** **Supplementing Disclosures and Responses.**

        **(1)** **In General.** A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request

26

for admission--must supplement or correct its disclosure or response:

**(A)** in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

**(B)** as ordered by the court.

Fed. R. Civ. P. 26(e).

The discovery responses at issue, here, are to requests for interrogatories, pursuant to Rule 33, and requests for production of documents, pursuant to Rule 34. The specific requirements of Rules 33 and 34 at issue are the requirements for objections. Rule 33 provides, in pertinent part, as follows:

**(4)** **Objections.** *The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.*

**(5)** **Signature.** The person who makes the answers must sign them, and the attorney who objects must sign any objections.

FED. R. CIV. P. 33(b)(4) (emphasis added). Similarly, Rule 34 provides, in pertinent part, as follows:

**(B)** **Responding to Each Item.** For each item or category, the response must either state that inspection and related activities will be permitted as requested *or state with specificity the grounds for objecting to the request, including the reasons*. The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting

27

inspection. The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response.

(C)    **Objections.** *An objection must state whether any responsive materials are being withheld on the basis of that objection.* An objection to part of a request must specify the part and permit inspection of the rest.

FED. R. CIV. P. 34(b)(2)(B) & (C) (emphasis added).

The key requirement in both Rules 33 and 34 is that objections require "specificity." As I explained a decade-and-a-half ago, "the mere statement by a party that the interrogatory [or request for production] was overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection"; "[o]n the contrary, the party resisting discovery must show specifically how . . . each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome or oppressive." *St. Paul Reins. Co., Ltd.*, 198 F.R.D. at 511-12 (internal quotation marks and citations omitted). In other words, "merely assert[ing] boilerplate objections that the discovery sought is vague, ambiguous, overbroad, unduly burdensome, etc. . . . without specifying how each [interrogatory or] request for production is deficient and without articulating the particular harm that would accrue if [the responding party] were required to respond to [the proponent's] discovery requests" simply is not enough. *Id.* at 512. Again, I have found nothing to suggest that such responses are now considered adequate; rather, there is precedent too ample to cite, in both the Eighth Circuit and the Seventh Circuit, where the lead attorneys for both sides have their offices, demonstrating the insufficiency of such responses.

Although Rule 33 contains an express "waiver" provision, explaining that a party has waived "[a]ny ground not stated in a timely objection," Rule 34 does not.

28

Nevertheless, as a magistrate judge of this court recently explained, that does not mean that inadequate responses to requests for documents do not constitute waivers:

> Federal Rule of Civil Procedure 34 does not explicitly provide that a party waives an objection by failing to file a timely response to a request for production of documents. Nonetheless, courts have routinely found that "if the responding party fails to make a timely objection, or fails to state the reason for an objection, he *may* be held to have waived any or all of his objections." *Scaturro v. Warren & Sweat Mfg. Co., Inc.*, 160 F.R.D. 44, 46 (M.D. Pa. 1995) (citing 4A *Moore's Federal Practice*, § 34.05[2] ) (emphasis in original). *See also Henry v. National Housing Partnership*, 2007 WL 2746725 (N.D. Fla. 2007) (finding that the law is "well settled" that a party's failure to file timely objections to a request for production of documents constitutes a waiver of the objections); *Krewson v. City of Quincy*, 120 F.R.D. 6, 7 (D. Mass. 1988) ("Any other result would completely frustrate the time limits contained in the Federal Rules and give a license to litigants to ignore the time limits for discovery without any adverse consequences.").
>
> In *Cargill, Inc. v. Ron Berge Trucking, Inc.*, 284 F.R.D. 421, 424 (D. Minn. 2012), the Court addressed the issue of whether "the same waiver provision found in Rule 33(b)(4) applies to document requests under Rule 34." After reviewing the history of the "automatic waiver provision" found in Rule 33, the Court noted that recent decisions concerning waiver of objections "reflect broad exercise of judicial discretion." *Id*. at 425.

*Sellars v. CRST Expedited, Inc.*, No. C15-0117, 2016 WL 4771087, at *2 (N.D. Iowa Sept. 13, 2016) (footnote omitted).   The court then listed factors to consider in determining whether to excuse a waiver, and conditions under which courts will impose a waiver.  *Id*.

29

## B.    *Improper discovery responses*

Although the federal discovery rules were intended to facilitate discovery and refocus cases on the legal merits, "the discovery process has supplanted trial as the most contentious stage in litigation."  London, *Resolving the Civil Litigant's Discovery Dilemma*, 26 GEO. J. LEGAL ETHICS at 837.  Improper discovery responses necessarily add to the contentiousness of litigation, because they start with non-disclosure as their premise.

The recitation, in the preceding section, of the specific *requirements* of the applicable discovery rules highlights what is wrong with the sort of "boilerplate" objections that the parties used in this case, but it does not address their full negative impact:

> The problems with using boilerplate objections, however, run deeper than their form or phrasing. Their use obstructs the discovery process, violates numerous rules of civil procedure and ethics, and imposes costs on litigants that frustrate the timely and just resolution of cases.

Jarvey, *Boilerplate Discovery Objections*, 61 DRAKE L. REV. at 916.  There may also be practical consequences for the party who asserts such objections.  "District courts often repeat the warning:  'Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all.'"  *Id.* (citing *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) (citations omitted); *Adelman v. Boy Scouts of Am.*, 276 F.R.D. 681, 688 (S.D. Fla. 2011) ("[J]udges in this district typically condemn boilerplate objections as legally inadequate or meaningless." (citations omitted) (internal quotation marks omitted)); *Nissan N. Am., Inc. v. Johnson Elec. N. Am., Inc.*, No. 09-CV-11783, 2011 WL 669352, at *2 (E.D. Mich. Feb. 17, 2011) (refusing to consider "[b]oilerplate or generalized objections")); *see id.* at 918-19 (identifying other reasons that "boilerplate" objections are disfavored).

30

I now find, without doubt or hesitation, that the discovery responses by the parties in this case that I identified as potentially abusive and/or not in compliance with the applicable rules, but mere "boilerplate" objections, are just that. I am not convinced that the possible exceptions to the "boilerplate" objections that I noted in two of Liguria's responses or the three additional responses that Liguria now cites are sufficient to "show specifically how . . . each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome or oppressive." *St. Paul Reins. Co., Ltd.*, 198 F.R.D. at 511-12. Even if I accepted all five of the responses that Liguria has identified as adequate, there are certainly plenty of others that are not.

First, as I suggested, in the table, above, several discovery responses by both parties violate Rule 26(d). It is not a valid objection that interrogatories or requests for documents are "premature" if, as is the case here, they were propounded after the time specified in Rule 26(d)(1) or (d)(2) and there was no order specifying the timing of discovery on any specific issues. Rule 26(d)(3) also makes clear that there is no limitation on the sequence of discovery and that a party cannot delay responding to discovery simply because the other party has not yet responded to its discovery. FED. R. CIV. P. 26(d)(3)(B); *see also id.*, Advisory Committee Notes, 1970 Amendments. Moreover, it is not an "objection" at all, and certainly not a valid one, that a party may not have a response or responsive documents, yet, or that the party may have to supplement its response later, because Rule 26(e) imposes that very obligation to supplement responses. *See id.* at 26(e).

The parties' attempts to invoke privileges as the bases for various objections, as indicated in the table, are, likewise, deficient, because they violate the requirements of Rule 26(b)(5)(A)(iii). Conspicuously absent from either parties' objections based on "privileges" is the required list or log that describes the pertinent documents without disclosing the allegedly privileged communications they contain. FED. R. CIV. P.

Case 3:14-cv-03041-MWB   Document 136   Filed 03/13/17   Page 31 of 45

26(b)(5)(A)(iii); *PaineWebber Grp., Inc.*, 187 F.3d at 992. Thus, the responses improperly hampered, rather than facilitated, the timely and inexpensive determination of privilege issues. *PaineWebber Grp., Inc.*, 187 F.3d at 992 (the privilege log requirement codified in Rule 26(b)(5) was designed to eliminate time-consuming delays in the determination of privilege issues).

The rest of the discovery responses identified in the table fail the "specificity" requirements of Rules 33(b)(4) and 34(b)(2) in various ways, while utterly failing to carry the objecting party's burden to demonstrate lack of relevance or undue burdensomeness under Rule 26(b)(1). *St. Paul Reins. Co., Ltd.*, 198 F.R.D. at 511. As the Eighth Circuit Court of Appeals has explained, an objecting party does not have "the unilateral ability to dictate the scope of discovery based on their own view of the parties' respective theories of the case," so that a "lack of relevance" objection, without explanation, is contrary to the rules. *Sentis Grp., Inc.*, 763 F.3d at 925. When, as here, an objecting party makes no attempt to "show specifically how . . . each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome or oppressive," and no attempt to "articulat[e] the particular harm that would accrue if [the responding party] were required to respond to [the proponent's] discovery requests," but relies, instead, on "the mere statement . . . that the interrogatory [or request for production] was overly broad, burdensome, oppressive and irrelevant," the response "is not adequate to voice a successful objection"; instead, the response is an unacceptable "boilerplate" objection. *St. Paul Reins. Co., Ltd.*, 198 F.R.D. at 511-12 (internal quotation marks and citations omitted). Moreover, simply stating that a response is "subject to" one or more general objections does not satisfy the "specificity" requirement, because, for example, it leaves the propounding party unclear about which of the numerous general objections is purportedly applicable as well as whether the

32

documents or answers provided are complete, or whether responsive documents are being withheld. *See, e.g.*, FED. R. CIV. P. 34(b)(2)(C).

I also reject Griffith's argument that its general objections to discovery requests or its "boilerplate" objections to certain specific requests were to assure that Griffith was not waiving its rights while the parties met and conferred about the scope of privileges, pertinent time periods, and a myriad of other issues in this complex case. As I pointed out, above, under both Rule 33 and 34, any ground not stated in a timely objection is waived, unless the court excuses the failure. *Sellars*, 2016 WL 4771087 at *2. Indeed, the idea that such general or "boilerplate" objections preserve any objections is an "urban legend." Jarvey, *Boilerplate Discovery Objections*, 61 DRAKE L. REV. at 925-26 (quoting *Carmichael Lodge No. 2103, Benevolent & Protective Order of Elks of U.S. of Am. v. Leonard*, No. CIV S-07-2665 LKK GGH, 2009 WL 1118896, at *4 (E.D. Cal. Apr. 23, 2009)). Chief Justice Menis E. Ketchum II of the West Virginia Supreme Court of Appeals had particularly harsh yet insightful condemnations for such practices:

> Many federal courts have opined that "subject to" or "without waiving" objections are misleading, worthless and without legitimate purpose or effect. They reserve nothing. As one federal judge observed, "The Parties shall not recite a formulaic objection followed by an answer to the request. It has become common practice for a Party to object on the basis of any of the above reasons, and then state that 'notwithstanding the above,' the Party will respond to the discovery request, subject to or without waiving such objection. Such an objection and answer preserves nothing and serves only to waste the time and resources of both the Parties and the Court. Further, such practice leaves the requesting Party uncertain as to whether the question has actually been fully answered or whether only a portion of the question has been answered."

Case 3:14-cv-03041-MWB   Document 136   Filed 03/13/17   Page 33 of 45

Chief Justice Menis E. Ketchum II, *Impeding Discovery: Eliminating Worthless Interrogatory Instructions And Objections*, 2012-JUN W. VA. L. 18, 19 (2012) (citation omitted). He then observed,

> Our circuit judges are swamped with motions to compel regarding discovery. Stiff sanctions by judges for each violation would have a dramatic effect on these unauthorized boilerplate objections. The word would spread quickly, and the practice would suddenly stop. "Without waiving" and "subject to" objections are cute and tricky but plainly violate the purpose of our *Rules of Civil Procedure*: "to secure just, speedy and inexpensive determination of every action."

*Id.* at 20 (citation omitted).

Thus, the general objections and the "boilerplate" objections to specific requests did not preserve the parties' rights, or, at the very least, they ran a substantial risk of delaying and increasing the costs of discovery, because they provided the opposing party with no clue how to begin narrowing the issue, and because the court might have to become involved to determine whether any waiver should be excused. *Sellars*, 2016 WL 4771087 at *2. A better approach to preserving rights and narrowing the scope of discovery, and one likely to cause less ultimate delay and expense, would be to request an extension of time to respond and to confer on troublesome discovery requests. Yet another approach would have been to request an *ex parte* and *in camera* review of certain documents by a magistrate judge, who might quickly render an opinion on whether the documents in question were discoverable.

### C. Sanctions

This litany of discovery abuses leads to the question of whether sanctions are appropriate for such misconduct. I am not alone in thinking that more frequent

34

application of sanctions by trial judges might have a beneficial impact. As Chief Justice Kechum wrote,

> Civil lawyers who are brave enough to appear in front of juries are becoming extinct. Perhaps they no longer have the time to appear in front of juries because they are dealing with pusillanimous objections to interrogatories and reading pages and pages of mindless interrogatory instructions. *I wish more judges would punish this nonsense.* Even better: I wish judges could force these lawyers who play games with interrogatories to appear before juries. These discovery-abusing lawyers would quickly find that you can't win a jury trial by being cute or tricky; you only win by doing the hard work.

Chief Justice Ketchum II, *Impeding Discovery*, 2012-JUN W. VA. L. at 21 (emphasis added); *accord* Jarvey, *Boilerplate Discovery Objections*, 61 DRAKE L. REV. at 932 ("Judges are in a unique position to deter the use of unethical boilerplate discovery objections. Unlike attorneys, judges may rely on their authority to issue sanctions under Federal Rule of Civil Procedure 26 and on the inherent power of the court. In order to curb boilerplate objections, judges should be more willing to dole out sanctions against lawyers who abuse the discovery process by issuing these objections." (footnotes omitted). On the other hand, as I pointed out at the beginning of this decision, imposing sanctions is an odious task. As one commentator has observed,

> Although courts certainly have the power to sanction discovery violators, many are reluctant to impose severe sanctions in the discovery context because of the oft-enunciated policy that cases should be decided on their merits. Also, though they rarely say so, many judges are reluctant to impose sanctions that may adversely affect the professional reputations and livelihoods of lawyers who practice before them.

35

Beckerman, *Confronting Civil Discovery's Fatal Flaws*, 84 M<small>INN</small>. L. R<small>EV</small>. at 511. I turn to the court's authority to impose sanctions and whether doing so is appropriate in this case.

As I have pointed out, "Rule 26(g) of the Federal Rules of Civil Procedure imposes on counsel and parties an affirmative duty to conduct pretrial discovery in a responsible manner." *St. Paul Reins. Co., Ltd.*, 198 F.R.D. at 515 (citing F<small>ED</small>. R. C<small>IV</small>. P. 26(g), Advisory Committee Notes to 1983 Amendments). The Rule specifically requires certification that the responses or objections to discovery requests are "not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." F<small>ED</small>. R. C<small>IV</small>. P. 26(g)(2)(B). Thus, this Rule allows the court to impose sanctions on the signer of a discovery response when the signing of the response is incomplete, evasive, or objectively unreasonable under the circumstances. *St. Paul Reins. Co., Ltd.*, 198 F.R.D. at 515. Even if the opposing party "did not seek sanctions pursuant F<small>ED</small>. R. C<small>IV</small>. P. 26(g), the court has authority to make a *sua sponte* determination as to whether Rule 26(g) sanctions should be imposed." *Id*. Rule 26(g)(3) states, "The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." F<small>ED</small>. R. C<small>IV</small>. P. 26(g)(3). The Eighth Circuit Court of Appeals has rejected the notion "that it is an abuse of discretion for a district court to impose something other than the minimally punitive sanction available within the range of possible sanctions," flatly stating, "[i]t is not." *Sentis Grp., Inc.*, 763 F.3d at 926.

More specifically, as to the basis for determining whether sanctionable conduct has occurred and what sanctions to apply, I have explained as follows:

> The Advisory Committee's Notes indicate that the "nature of sanctions is a matter of judicial discretion to be exercised in light of the particular circumstances." FED.R.CIV.P. 26(g), Advisory Committee Notes to the 1983 Amendments. The

36

standard for imposing Rule 26(g) sanctions is objective. The court tests the signer's certification under an objective standard of reasonableness, except that it may inquire into the signer's actual knowledge and motivation to determine whether a discovery request, response or objection was interposed for an improper purpose. *Oregon RSA No. 6 v. Castle Rock Cellular*, 76 F.3d 1003, 1007 (9th Cir.1996); *accord Zimmerman v. Bishop Estate*, 25 F.3d 784, 790 (9th Cir.), *cert. denied*, 513 U.S. 1043, 115 S.Ct. 637, 130 L.Ed.2d 543 (1994). While there is no requirement that the court find bad faith to find improper purpose, *see Oregon RSA No. 6*, 76 F.3d at 1008, outward behavior that manifests improper purpose may be considered in determining objective improper purpose deserving sanction. *See Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1366 (9th Cir.1990) (Rule 11 sanctions). The certification by the signer is tested as of the time the discovery paper is signed. The court must strive to avoid the wisdom of hindsight in determining whether the certification was valid at the time of the signature, and all doubts are to be resolved in favor of the signer. *See, e.g., Bergeson v. Dilworth*, 749 F.Supp. 1555, 1566 (D.Kan.1990). However, each signing of a new discovery request, response, or objection must be evaluated in light of the totality of the circumstances known at the time of signing. Therefore, the practical import of Rule 26(g) is to require vigilance by counsel throughout the course of the proceeding. *Chapman & Cole v. Itel Container Int'l, B.V.*, 865 F.2d 676 (5th Cir.), *cert. denied*, 493 U.S. 872, 110 S.Ct. 201, 107 L.Ed.2d 155 (1989).

*St. Paul Reins. Co., Ltd.*, 198 F.R.D. at 516 (footnotes omitted).

Liguria proposes that, if I conclude that sanctions are appropriate, notwithstanding Liguria's contention that it did not make its responses for any improper purposes, the proper sanction is the submission of a presentation to either (1) a group of civil litigation trial attorneys at the Chicago Bar Association or Illinois State Bar Association, or (2) a

group of law students at a Chicago area law school engaged in an advanced civil procedure course covering the rules of discovery. Liguria suggests that such a presentation include the following topics: (a) Rules 26, 33, and 34 of the Federal Rules of Civil Procedure; (b) proper approaches to propounding and responding to discovery requests; and (c) reasons why "boilerplate" objections are improper.

Griffith argues that, as to the matters identified in the Show Cause Order, this case does not involve the sort of extreme misconduct in discovery that should warrant sanctions. Nevertheless, Griffith's counsel professes to having no objection to participating in a continuing legal education program or providing such a program, regarding the problems relating to "boilerplate objections," or to writing an article on those problems for the court to review and approve. Griffith asserts, however, that under the facts of this case to impose a sanction, rather than a voluntary undertaking, would constitute an abuse of discretion.

Ordinarily, I would likely find the parties' use of what they admit are "standard," albeit plainly improper, responses to discovery requests is objective evidence of intent to delay or impede discovery. *St. Paul Reins. Co., Ltd.*, 198 F.R.D. at 517. Although I find that it makes a very poor jury instruction on "intent" for lay jurors, "[i]t is a well-accepted proposition that one ordinarily intends the natural and probable consequences of one's actions." *See, e.g., Red River Freethinkers v. City of Fargo*, 764 F.3d 948, 955 (8th Cir. 2014). The "natural and probable consequences" of "boilerplate" objections is delay and impediment of discovery, not the narrowing of issues and the avoidance of expense and delay toward which the discovery rules are aimed. Ordinarily, I would also likely find that the impropriety of employing such frivolous objections in every single discovery response also demonstrates the parties' obstructionist attitude toward discovery and would further confirm suspicions that the responses were interposed for an improper purpose. *Cf. St. Paul Reins. Co., Ltd.*, 198 F.R.D. 517.

38

I conclude that this is *not* an "ordinary" case where the parties' responses to discovery were not only contrary to the applicable rules and "improper," but warrant some sanction. In this case, I do not have lawyers who are not "brave enough to appear in front of juries," but able trial lawyers; nor do I find that they focused on "pusillanimous objections" as an end in themselves or as part of a campaign to avoid timely and just disposition of this case. *Compare* Chief Justice Ketchum II, *Impeding Discovery*, 2012-JUN W. VA. L. at 21. The parties agree, and I find, that they have had a cooperative and professional relationship during discovery, at least until the issues addressed in Griffith's Motion arose. Indeed, it appears to me that counsel for the parties did everything that the court might expect them to do to confer and cooperate to work out issues about the scope of discovery. It is also clear to me that both parties' reliance on improper "boilerplate" objections is the result of a local "culture" of protectionist discovery responses, even though such responses are contrary to the decisions of every court to address them. Notable by their absence from the parties' responses to the Order To Show Cause are citations to any published rulings of any court approving the kind of "boilerplate" responses that the parties used in this case, and the parties did not try to raise frivolous defenses for their conduct when called on it. The fact that the parties were able to work out most of their discovery disputes through consultation and cooperation is a clear indication that their "boilerplate" responses were completely unnecessary to protect any supposed rights or interests, but they do not warrant sanctions, in the circumstances presented, here.

I have suggested, more than once, in this opinion that judges should be more involved in trying to eliminate discovery practices that are improper. Indeed, nearly twenty years ago, a commentator explained that all of the groups of lawyers involved in his conversations with large-firm litigators "pointed to judges as pivotal to changing how the system operates." He cautioned,

> Yet it seems clear after talking to the judges about how they
> view these disputes, as well as after talking to lawyers about
> the tactics they deploy, that judicial intervention is not likely
> to be the answer. Judges do not have the time, resources, or
> inclination to constantly monitor the discovery process.
> Stronger judges who were committed to changing the norms
> of the system would probably help. They will need
> considerably more resources to do so, however.

Nelson, *The Discovery Process as a Circle of Blame*, 67 FORDHAM L. REV. at 804-05.
One resource available to judges, when they encounter attorneys willing to do so, is to
use those attorneys to spread *proper* practices, rather than *improper* ones

Thus, I strongly encourage counsel for both parties to take the steps that they have
volunteered to take to improve discovery practices at their own firms and to educate their
colleagues and law students on proper discovery responses. I would be gratified to see
the parties prepare presentations to either (1) a group of civil litigation trial attorneys at
the Chicago Bar Association or Illinois State Bar Association, or (2) a group of law
students at a Chicago area law school engaged in an advanced civil procedure course
covering the rules of discovery and, in particular, (a) Rules 26, 33, and 34 of the Federal
Rules of Civil Procedure; (b) proper approaches to propounding and responding to
discovery requests; and (c) reasons why "boilerplate" objections are improper. Because
no sanctions are imposed, I neither require them to do so nor need to review what they
intend to do. These are very honorable, highly skilled, extremely professional and
trustworthy lawyers. The legal culture of "boilerplate" discovery objections will not
change overnight. I trust these lawyers to do their part, as I will do mine.

## III.   CONCLUSION

Federal discovery rules and the cases interpreting them uniformly finding the
"boilerplate" discovery culture impermissible are not aspirational, they are the law.

What needs to be done?  I am confident, based on the sincere representations from lead counsel in this case, that they will be ambassadors for changing the "boilerplate" discovery objection culture in both their firms.  I also encourage them to change the "boilerplate" culture with other firms that they come up against in litigation.  I encourage all lawyers, when they receive "boilerplate" objections, to informally request that opposing counsel withdraw them by citing the significant body of cases that condemn the "boilerplate" discovery practice.  If opposing counsel fail to withdraw their "boilerplate" objections, the lawyers should go to the court and seek relief in the form of significant sanctions—because the offending lawyers have been warned, given a safe harbor to reform and conform their "boilerplate" discovery practices to the law, and failed to do so.

The second part of this process is for judges to faithfully apply the discovery rules and put an end to "boilerplate" discovery by imposing increasingly severe sanctions to change the culture of discovery abuse.  I realize my judicial colleagues, especially state trial court judges, are overwhelmed with cases, deluged with discovery matters, likely sick and tired of them, and lack the resources needed to deal with them in as timely a manner as they aspire to.  In my view, the imposition of increasingly severe sanctions will help solve the problems.  Lawyers are advocates and trained to push the envelope— rightly so.  Judges need to push back, get our judicial heads out of the sand, stop turning a blind eye to the "boilerplate" discovery culture and do our part to solve this cultural discovery "boilerplate" plague.  Like Chief Justice Ketchum, I am convinced that "[s]tiff sanctions by judges for each violation would have a dramatic effect on these unauthorized boilerplate objections.  The word would spread quickly, and the practice would suddenly stop."[14]

---

[14] Chief Justice Ketchum II, *Impeding Discovery*, 2012-JUN W. VA. L. at 20.

The addiction to "boilerplate" discovery objections has been exacerbated by an unintended consequence of a 1980 amendment to Rule 5 of the Federal Rules of Civil Procedure. That amendment exempted interrogatories and requests for documents, as well as their responses, from filing with the court. The rationales—"the added expense" of copying and the "serious problems of storage in some districts"— made some sense at the time.[15] However, judges no longer have access to discovery requests and their responses, unless brought to their attention by motion. Thus, because both sides to federal litigation are so often afflicted with this addiction, there is not only no incentive to bring the matter to the court's attention, there is a perverse incentive to bilaterally succumb to the addiction without the need to ever inform the court of the parties' "boilerplate" addiction. This makes the discovery of "boilerplate" addiction much more difficult for judges. "Boilerplate" responses cause the very harm that justifies their prohibition, even if neither party brings them to the court's attention.

To address the serious problem of "boilerplate" discovery objections, my new Supplemental Trial Management Order advises the lawyers for the parties that "in conducting discovery, form or boilerplate objections shall not be used and, if used, may subject the party and/or its counsel to sanctions.[16] Objections must be specific and state

---

[15] *See* FED. R. CIV. P. 5, Advisory Committee Notes on 1980 Amendment. Of course, the drafters of this 1980 amendment could not have anticipated that copying costs and storage space would be far less of a problem in the electronic age in which lawyers and judges now work. But unintended consequences of civil rules of procedure, which often render the proposed cure worse than the alleged disease, are nothing new. *See e.g.,* Mark W. Bennett, *Essay: The Grand Poobah And Gorillas In Our Midst: Enhancing Civil Justice In The Federal Courts Courts--Swapping Discovery Procedures In The Federal Rules Of Civil And Criminal Procedure And Other Reforms Like Trial By Agreement*, 15 NEV. L.J., 1293, 1300 (Summer 2015).

[16] My new Supplemental Trial Management Order was implemented prior to these issues arising in this case, but it is not applicable, here, because I only started using it in

42

an adequate individualized basis." The Order also imposes an "affirmative duty to notify the court of alleged discovery abuse" and warns of the possible sanctions for obstructionist discovery conduct.[17]

---

2017.

[17] The portion of the Supplemental Trial Management Order prohibiting "boilerplate" objections continues, as follows:

> For example:
>
> 1.    When claiming privilege or work product, the parties must comply with Fed. R. Civ. P. 26(b)(5)(A).
>
> 2.    The Court does not recognize "object as to form" as a valid objection to a deposition question; rather, the objecting party must state the basis for the form objection. *e.g.* compound, argumentative, etc.
>
> 3.    Attorneys cannot respond to any discovery request with something similar to "blanket objections and a statement that discovery would be provided 'subject to and without' waiving the objections." *See, e.g. Network Tallahassee, Inc., V. Embarq Corp.*, 2010 WL 4569897 (N.D. Fla. 2010).

After defining and prohibiting other obstructionist discovery conduct, the Supplemental Trial Management Order imposes an "affirmative duty to notify the court of alleged discovery abuse" and warns of the possibility of sanctions, as follows:

> D.    AFFIRMATIVE DUTY TO NOTIFY THE COURT OF ALLEGED DISCOVERY ABUSE. Any party subjected to obstructionist conduct in discovery or depositions or conduct that the party reasonably believes to be intended to impede, delay, or frustrate the fair examination of deponents or the process of discovery shall promptly file a Report to the Court in writing, advising the Court of the specific nature of the alleged discovery abuse, regardless of whether or not the party intends to seek sanctions on its own motion.  The Court

43

I recall the words of a former U.S. Attorney General in a different context: "Each time a [person] stands up for an ideal, or acts to improve the lot of others, or strikes out against injustice, [they] send[ ] forth a tiny ripple of hope, and crossing each other from a million different centers of energy and daring, those ripples build a current which can sweep down the mightiest walls of oppression and resistance."[18] I pledge to do my part—enough of the warning shots across the bow.

---

will then determine whether to issue a notice to show cause why sanctions should not be imposed, conduct a hearing after notice, and impose sanctions, if appropriate.

E. SANCTIONS. Sanctions for obstructionist conduct or other misconduct during discovery may include, but are not limited to, individually or in combination, the following:

1. monetary sanctions;

2. attendance at, or preparation of, a continuing legal education presentation or training video on appropriate and inappropriate discovery conduct tailored to the discovery violation;

3. preparation and submission for publication of a law review or legal journal article on appropriate and inappropriate discovery conduct tailored to the discovery violation;

4. revocation or suspension of *pro hac vice* status or admission to practice in the United States District Court for the Northern District of Iowa;

5. sanctions in Fed. R. Civ. P. 37(b)(2)(A); or

6. any other reasonable sanction.

[18] Robert F. Kennedy, Day of Affirmation Address at Cape Town University (June 6, 1966) (transcript available at www.americanrhetoric.com/speeches/rfkcapetown.htm).

The conduct identified in the Show Cause Order does not warrant sanctions, notwithstanding that the conduct was contrary to the requirements for discovery responses in the Federal Rules of Civil Procedure. NO MORE WARNINGS. IN THE FUTURE, USING "BOILERPLATE" OBJECTIONS TO DISCOVERY IN ANY CASE BEFORE ME PLACES COUNSEL AND THEIR CLIENTS AT RISK FOR SUBSTANTIAL SANCTIONS.

**IT IS SO ORDERED**.

**DATED** this 13th day of March, 2017.

_Mark W. Bennett_
_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA